Good morning, Your Honors. Alex Davis on behalf of Appellant District Ordonez. May I reserve three minutes for rebuttal? I notice there's another gentleman here. Is he one of the supervisors or are you going to be appearing as well? Oh, okay. Nice to see you. Excellent. We're looking forward to an excellent performance. Thank you. Davis, please. Your Honors, this court should reverse the district court because sovereign immunity should not bar a claim for money damages under Rule 41G actions. Counsel, I'm inclined to agree with you that it shouldn't. Frankly, I'm kind of outraged at the way the government is careless with people's property, people who don't have very much. But whether it shouldn't really isn't the question. It's whether it does. And here's my problem with your case. I read Rule 41G, and it says that a person aggrieved may move for the property's return. That's all it says, move for the property's return. And then I look at the Supreme Court decision in Lane v. Pena, and it says the waiver of sovereign immunity, that the government is liable for money damages only where the waiver of sovereign immunity extends unambiguously to such monetary claims. Here, it would be a stretch to even say it's ambiguous. It looks like it unambiguously does not waive sovereign immunity for money claims. And then I look at the Federal Tort Claims Act, which looks pretty good. But the problem is you can't proceed under the Federal Tort Claims Act unless you first make a timely demand on the agency for your damages. I'm thinking of some poor prisoner who has his family pictures in his diary taken away by guards who don't value it and thrown away. It looks like he has to go through all this rigmarole. And like eight other circuits have said, yep, that's the way it is. How do you get around that? I don't really understand. Well, Your Honor, Rule 41G unambiguously does extend to money damages. First, if we look at the text of the actual statute. I'm looking at Rule 41G right now. Okay. It says to return the property. May move for the property's return is what it says. Correct. One definition of the word to return is to repay. And both Merriam-Webster Dictionary, American Heritage Dictionary, both agree that. That reminds me of a case we had on the right to keep and bear arms. And bear may mean carry. It may also mean someone who thinks the stock market will go down. It may mean a large, furry mammal. You think return means pay money? It seems kind of non-obvious. Well, Your Honor, I do believe based on that dictionary definition, but more importantly, that this Court has consistently over time read Rule 41G to extend to money damages. Well, let's go ahead. I was going to say, let's focus in on some of the cases that you're referring to, Mr. Davis. And looking at Martinson, and I'd like to look at footnote number two in Martinson, which tells us in remarks that the government had not consented explicitly to be sued and the equitable jurisdiction of the court was not based on express congressional authorization, and that these concerns exist regardless of whether or not damages are sought. Now, if you would comment, does that adequately address the sovereign immunity issue in that context? That's the closest that decision comes to anything related to sovereign immunity. Correct, Your Honor. We are not saying that Martinson is determinative on the sovereign immunity issue. As far as our reading of Martinson, Martinson did not squarely consider sovereign immunity. But cases following Martinson have. And they cite the sovereign immunity. And they say that Martinson made it all all right pursuant to that. True? I'm sorry. Well, what I'm saying is Martinson has been cited for saying that, even though when you get down to reading Martinson, it really didn't explicitly say that. So that's the way I was reading this case. And I guess why shouldn't this Court today look at the approach taken by the Second Circuit in the Adeliki case? I think I'm pronouncing that correctly, Adeliki? Correct. So look at Martinson and discuss the Second Circuit's approach. Okay. Because as my colleague said, eight other circuits are viewing this in a particular way. That's right. The other circuits do disagree with the Ninth Circuit's approach on awarding money damages. However, the other circuits are applying the improper standard as to construing this, construing sovereign immunity generally. Well, let's go to a more recent thing here. You're familiar with FAA v. Cooper decided by the Supreme Court about two weeks ago? Yes, I am, Your Honor. Okay. Doesn't that just blow this completely out of the water? No, it does not. Tell me why not. FAA v. Cooper, the whole case turned on the phrase actual damages. The question was, it was ambiguous. And Justice Scalia had a strong view about what was required in order to find a waiver of sovereign immunity. And what was that? I don't remember the exact phrase. It didn't have to be. Express language, unambiguous express language in the statute waiving sovereign immunity. Now, in this particular case, I think a good argument can be made that 41G isn't ambiguous. But it has to be ambiguous for you to succeed. But if it's ambiguous, don't you run smack into the face of Cooper? We do not think that it is ambiguous. Okay. If it isn't ambiguous, let's take that approach. We don't get to Cooper. But then you've got these eight other circuits that tell us, not ambiguous, you don't get this. However unjust it may be. I mean, Judge Kleinfeld has made the very valid point that as humans, as individuals, we might say, oh, this is a terrible rule, or Congress didn't really think about this. But that's how it's been construed, and on its face, it doesn't expressly state that The words sovereign immunity do not appear in Rule 41G. However, Does it say, whether it says sovereign immunity or not, does it say that the United States may be sued for damages if you don't get this back? Well, the whole, when Rule 41G was promulgated, that specific rule then allows someone to petition the court to have the property returned or the value. And had Rule 41G not been enacted, there would be no right, and therefore, sovereign immunity. So you're saying that because there was a previous regime, that when 41G was enacted, that it, by definition, incorporated that regime into its structure? Which particular regime, Your Honor? 41G. In other words, if I understood you correctly, perhaps I didn't, I thought you said that before 41G was enacted, you could sue to get money damages. Is that correct? No. Oh, I misunderstood. I misunderstood. Right. Before Rule 41G was promulgated, there wasn't a statute providing for the return of property. But you could sue for it anyway? No, you could not. Okay. So we're starting from scratch then with 41G. I thought there used to be something, maybe I'm mixing it up with our state rule that follows the federal rule generally. I thought for many decades, you've been able to move for the return. Return was common because, oh, for example, a burglar comes into your house and steals your stereo. The cops take your stereo and they put it in the court's evidence room until the burglary case is all over. And then when it's all over and through the appeals and everything else, they forget about it. So you move for the return of your stereo set.  Well, Rule 41 used to be used for that all the time and it was just returned. So I don't really understand why we would take the view that return means the non-obvious and non-common usage of pay for or why there's anything new. We are looking at the Supreme Court jurisprudence and specifically FEA v. Cooper. The court reaffirmed its ruling, the Richeland, which says that strict construction of sovereign immunity is a canon of statutory interpretation and it's one to be used among many other canons of statutory interpretation. Actually, I know a little bit about the Cooper case, having written it. And it is, they applied, even though it was a canon, that was the basis upon which they overturned the construction. They acknowledged that there were other statutes where the term actual damages was construed in the way that we construed it. They acknowledged that it would gut the Privacy Act. They nonetheless applied the canon as the basis for so construing the statute and they were criticized for that by the dissent. So aren't we stuck with the fact that the Supreme Court says canon or no canon, if you want to get into the pocketbook of the United States, you must have an express authorization to do so or you're out of luck. Why is that wrong? When considering FAA v. Cooper and how they did mention what I had just said about statutory interpretation, looking at the other decisions, such as the White Mountain v. Apache, White Mountain Apache tribe, as we cited in our brief, what the Supreme Court said there was that when you have an express waiver of sovereign immunity, such as Rule 41G providing a route for a motion, is that when looking for money damages or further waivers, for example, the proper standard to apply is one of fair interpretation, which is a lesser standard.  Fair interpretation? Fair interpretation. What does that mean? So what the court explained that... I thought that was under the Indian Tucker Act. The fair interpretation standard isn't necessarily under... My point is that Indians get treated differently in the Supreme Court cases. All ambiguities are construed in favor of the Indians. If there are alternative readings possible, they're read in favor of the Indians. There's a canon to that effect. I can't remember what it's called. Well, Your Honor, I don't think that White Mountain needs to be read that narrowly because the Supreme Court does, through Richland and White Mountain Apache tribe, and Richland is also not a, Richland is not an Indian tribe's case, but you can read those two cases as the Supreme Court's general relaxation of sovereign immunity generally. With respect, Mr. Davis, doesn't the Supreme Court repeatedly say if there's a plain meaning of the statute, that's what you go with? Even if it's an absurd thing, the Supreme Court seems to embrace it all the more. You just really like to have the plain meaning. I don't know what this fair interpretation is, and it may be what Judge Kleinfeld referred to. You've got just a little over three minutes. Do you want to save time for rebuttal, or do you want to proceed with your presentation now? I'll reserve time for rebuttal. Okay, very good. Thank you, Your Honor. Let's hear from the government. Good morning, Your Honors, and may it please the Court. Assistant United States Attorney, Jessica Che, on behalf of the United States. Counsel, am I right that the only way a prisoner can get compensated in money damages, if, say, the guards, when he comes into the prison, they put his iPod in their pocket, the prisoner's property basket, and then, well, let's say a guard steals it, or let's say they're just careless and it winds up in the trash. He could move for the return of his iPod under Rule 41, but they don't have it anymore. He could, the only way he can get compensated so that he can buy a new iPod to have a little bit of entertainment while he's rotting in his cell is he has to make a claim under the Federal Tort Claims Act and then sue for money damages after his claim is denied. Have I got that right? Well, Your Honor, in this case, the district court did advise Mr. Ordonez to institute administrative proceedings pursuant to the FDCA. It was too late by then, wasn't it? It was too late, and he would not have been able to recover in any way. I can't imagine many prisoners who know about how to file an administrative claim under the Federal Tort Claims Act. Your Honor, he would not have been able to. Here's my concern. As far as I can tell, that's the only procedure, and it's illusory, because very few prisoners are going to know how to take advantage of it, which means the prisons are likely to be extremely careless with what meager property the prisoners come in with, and there's no remedy. Is that right? Well, Your Honor, the FDCA's limited waiver of sovereign immunity explicitly excludes claims of damages related to the detention of property by law enforcement officials, which is why he would not have had a remedy under the Federal Tort Claims Act. So he's got no remedy at all. If a guy comes into prison and he's wearing the gold chain, a gold chain, and he's got an iPod, and he's got the lucky silver dollar his father gave him when he was 13, they can steal it all. All type of gold chain. And they can steal it all, and the prisoner's just plain out of luck. Well, the damages provided by the FDCA's limited waiver of sovereign immunity  I mean, prison guards may not always be such fine law enforcement officers. In any profession, there are some people who aren't so good. That may be true, Your Honor, but jurisdiction is not a question of equity or discretion, and it's significant. I know that. What I'm asking is, is there any genuine remedy for the prisoner? Where the United States is no longer in the possession of the property, Rule 41G does not provide a remedy for money damages. So the government's position is 41G provides only for the return of property. There is no circumstance under which money damages can be obtained. That's correct, Your Honor. And there's no Federal Tort Claims remedy either because of that exception? Because of the detention of goods exception that was recently affirmed by the Supreme Court in Alley v. Bureau of Prisons. And that the fact that he would not have been able to recover under the FDCA is significant to the extent that granting an award of damages under Rule 41G in this case would allow a party to recover damages pursuant to a rule of procedure where that party would be precluded from the same relief under a statute that's been passed by Congress. This would be a bizarre result because that award of damages would be directly contrary to Congress's explicit intent. I want to shift the subject a little bit, and I acknowledge that were we to agree with the government about its position on sovereign immunity, we wouldn't have to reach this. But it appears that the district court required Mr. Ordonez to establish ownership in the seized property in order to obtain relief. Where do you find that in the statute? Or where does he have to establish ownership? Your Honor, to the extent that the United States did not oppose Mr. Ordonez's motion for the return of property, should the court decide to make available money damages to him, we would not necessarily. In fact, the government concedes the point that there is no ownership requirement for purposes of seeking relief if it's available against the United States. Is that right? However, we would certainly move the court to limit its review to those items which were listed on the FBI's original inventory. Right. Well, that's what I was going to ask you, Counsel. Would you make a distinction between what was originally in the government's inventory and what subsequently Mr. Ordonez submitted, saying these were additional items? Absolutely, Your Honor. Absolutely. And what would you suggest the standard is there? To the extent that it is the government's position that Rule 41g does not provide for money damages at all, we certainly would not concede that he would be entitled to consequential damages, which is essentially what he's arguing here, is basically the loss of various properties and various items, the loss of his business directly attributed to these alleged business records that he purports are to be so valuable. Those consequential damages, certainly we would not concede. We would urge the court to be limited to those items that were on the original inventory, nor would we concede valuation. So we would the value that Mr. Ordonez has attributed to each of those items. I mean, the majority. If we got that far, counsel, Mr. Ordonez would have a right to a hearing and to establish his ownership and value if we got to that point. I believe so, Your Honor. I couldn't understand what the establishment of ownership was about. I have a deed to my house and a title to my car, and I suppose my stocks are registered under my name. But most things, there is no document that the lucky silver dollar my father gave me when I went to law school, my family pictures. These things, I don't know how you'd prove it in the way the judge wanted it proved. And I can well imagine that it would look like junk to a prison guard when he inventoried my property and wouldn't be listed on the government's inventory. Well, there were a number of items listed on the inventory that were perishable, that were of little or no monetary value, such as chapsticks, soucrettes. A family picture would have no monetary value. That's true, Your Honor. So the government wouldn't list it on the inventory because they wouldn't be worried about being accused of stealing it. But I would think it would not be contraband, and a prisoner would very much want the picture of his wife and children in his cell. That's correct, Your Honor. The photos were actually listed among the items as part of the FBI's inventory. So I believe that every item, including a stick of chapstick that Mr. Ordonez had on his person at the time of his arrest, was inventoried on those FBI forms. So you're not – And once the criminal proceeding – Are you claiming, though, that it's a general principle if it's not on the government's inventory, then a motion for its return must lose? In this case, yes, Your Honor. If the item was not – Why? Rule 41G says that the district judge can take evidence. Why wouldn't he be allowed to testify that something was there, and then whatever government personnel were involved in the inventory could testify that it wasn't and the judge could decide? If Mr. Ordonez is able to present evidence that he had certain items on his person at the time of his arrest, then that would be something that we would support. What evidence would there be except his testimony on an item that does not have a registered title of some sort? Well, among the items that he's claimed, the additional items beyond the items that were listed on the original inventory are things like coffee carts, pieces of art that were in warehouses. And these, again, are basically consequential damages that he attributes to the loss of certain documents that were in a briefcase that were – that was among the items inventoried at the time of his arrest. So I don't think that he – I don't believe that his position is that he had those items on him at the time that he was arrested in 1993. I believe that he attributes their loss to the loss of the property that he did have on him. I guess the item of property would be, say, a bill from the storage locker company? To the extent – but again, we would urge the Court not to consider any items that were not actually inventoried at the time of his arrest. The Federal Rules of Criminal Procedure are just that. They're rules of procedure that do not confer substantive rights that are provided by acts of Congress. The Supreme Court's power to prescribe our Federal Rules of Civil and Criminal Procedure is set forth in a specific statute which specifies that such rules shall not abridge, enlarge, or modify any substantive right. And the government – That's in conformity with our Woodley case, right? Yes, Your Honor. It does. And that the award of – or the authorization to seek a claim for money damages in this case would be in direct opposition to Congress's explicit intent in the Federal Tort Claims Act. They intended to exclude damages for arising from property detained by law enforcement officials from the limited waiver of sovereign immunity that the FDCA provides. So – You know, it's just troubling. Frankly, your argument is really solid on the authorities. But it's troubling because the Constitution says the government can't take property without due process of law and just compensation. The law on sovereign immunity is that unless the government waives it, it has sovereign immunity, which means since there's an exception to the Federal Tort Claims Act for without due process or just compensation. They don't make that constitutional argument. I don't know if it would have any soundness because of the Supreme Court's authorities on sovereign immunity. But I just can't imagine a case where sovereign immunity works a more dubious result, frankly, than the result that the government can take property without due process or earn more money and replace it. And there's no remedy whatsoever. Well, Your Honor, I do think that there is a distinction between an intentional destruction or intentional taking of property and property, which is the situation here. It doesn't matter if it's intentional or negligent, really, under the Constitution. If, oh, the Air Force is doing practice runs over your house and they accidentally destroy your house, a plane drops out of the sky or a load from the plane drops onto your house and they destroy it, they have to pay for it. But if you're a prisoner, they can – and that's – they didn't mean to do it. It's not intentional. But if you're a prisoner, as I understand it, all you can get is return under Rule 41. You can't get damages no matter what because there's no waiver of sovereign immunity. The only one possible is Federal Tort Claims Act, and it has a prisoner exception. Have I got that right? I believe so, Your Honor. Your Honor, although I believe that under certain forfeiture, asset forfeiture proceedings, then the proceeds from the sale of an item that was forfeited would be recoverable, but this is not. But there's no forfeiture proceeding involved in most of these prisoner cases. No, Your Honor. For contraband, they're not entitled to get contraband back or to get damages. No, Your Honor. To the extent it's contraband, I don't believe that they would be recoverable. And that's where the forfeiture would come up. Right, right. Forfeiture doesn't come up for family pictures and diaries. Right, right. I'm sorry. Yes, Your Honor. But this is not a forfeiture. These are personal effects that happen to be on Mr. Ordonez's possession person at the time of his arrest. Don't wear a Rolex if you think you may be remanded to custody. Well, I mean, yes, Your Honor, I would agree with that. No, it's an unfortunate posture to be in, but unfortunately it is the law. It is sovereign immunity. It is a question of jurisdiction. So, unfortunately, in this instance, Mr. Ordonez is without relief, and we would submit that the district court correctly concluded that it lacked jurisdiction over his claim for money damages. Unless the court has further questions. Any other questions, my colleagues? No. Thanks very much. Thank you very much, Your Honor. Mr. Davis, you have a few minutes for a rebuttal. Thank you, Your Honor. Your Honor, just briefly, two points on rebuttal. First, as to the various lists of items, we only seek to have the case remanded for a determination of value on the government's accounting. So there's no issue as to which particular list. Second, as this court points out, essentially what the government is asking for this court to do is to issue an amendment that would allow the government to be able to take any piece of property that's confiscated from a prisoner, whether it be legitimate or illegitimate property, and drop it into a burn barrel, for example, and deprive the district court of jurisdiction. Now, this court has recognized that would just be fundamentally unjust, and opinions have come out subsequent to Martinson addressing the issue of sovereign immunity and saying that sovereign immunity does not bar a claim for money damages. For example, in U.S. v. Hayes, the exact words, and I quote, the government also suggests that Hayes' entire lawsuit is barred by sovereign immunity, but this claim clearly fails under Martinson. But we know Martinson didn't really address it squarely. Correct, Your Honor, but the Hayes court did. And in cases subsequent to Hayes have also relied on that issue, that sovereign immunity does not bar a claim. Go back to my earlier question, Mr. Davis, and look at the situation in the Second Circuit and the Adeliki case, and comment on that and how that was resolved subsequent to a case not unlike Martinson. Well, the reason that, in our opinion, that the other circuits' disagreement does not have bearing on this is, first, the Ninth Circuit has the right to disagree with other circuits. But more importantly, those other circuits were applying the improper standard. As I mentioned in the White Mountain Apache Tribe case, they mentioned that the proper standard to use is, one, a fair interpretation when there is an express waiver of sovereign immunity. Those other circuits did not apply that standard. They stuck with the old, stricter approach to sovereign immunity, such as the Lane v. Pena and the Norrick Village. So had those courts applied the more recent standard as laid forward? The more recent standard is Cooper, isn't it? Correct, Your Honor. And Cooper specifically cites to Richland, which Richland says that strict construction of sovereign immunity is just one candidate of many that should be applied when interpreting the statute. Isn't your real remedy to go to Congress, Mr. Davis? There's no question, as has been articulated by my colleagues, there may be a real problem. We have to follow the legislature and we have to follow the precedence of the Supreme Court. We have to follow the language of the rule in this case. And looking at it on its face, I don't see any express grant, any express waiver of sovereign immunity here. And if that is in fact the case, aren't our hands tied? Well, Your Honor, as to the sovereign immunity issue, sovereign immunity is expressly waived. Had there not been Rule 41G. Where is the language in 41G? It does not specifically say sovereign immunity has been waived. No, I just don't. Where does it say that you can sue the United States for damages? It does not say that you can sue for damages, but this Court has interpreted Rule 41G to allow for a civil equitable claim for damages. Actually, not true. Woodley v. United States says just the opposite. Are you familiar with Woodley? I'm not, Your Honor. Okay, well, that indicates that the Court can prescribe just terms and conditions to remedy a violation of a discovery, and then it says, but it provides no independent authority for monetary sanction, and therefore we decline to recognize a waiver of sovereign immunity. That was a 1993 case from our Court. Unless either of my colleagues have any other questions, we'll thank you both for your time, Mr. Davis, for a fine job, and we thank your sponsors here and appreciate their involvement in helping new advocates to train and learn their skills. We hope that whichever way this comes out, that you will feel that you have played an important role in providing due process for your clients so that the arguments that are And you've done a fine job. You present very well. I have great confidence you'll be a fine advocate. Thank you, Your Honor. So thank you, and the case just argued is submitted. Thanks to you all. Thank you. Thank you, Your Honor. Thank you. Adonis v. USA is submitted, and our final case for the morning is United States v. L. Bailey. Thank you, Your Honor.
judges: Sammartino, Kleinfeld, Smith